IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY C. SHARP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-857-WKW |
| | ) | [WO] |
| CITY OF MONTGOMERY, and | ) | |
| MONTGOMERY CITY-COUNTY | ) | |
| PERSONNEL BOARD | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary C. Sharp brings this action alleging race discrimination and retaliation in the denial of promotions. He invokes Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII"); 42 U.S.C. § 1981 ("§ 1981") and a corresponding damages provision, 42 U.S.C. § 1981a; and 42 U.S.C. § 1983 ("§ 1983"). He sues the City of Montgomery ("City") and the Montgomery City-County Personnel Board ("Personnel Board").

Before the court are Defendants' motions to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. # 36, 37.) Mr. Sharp responded in opposition (Docs. # 39, 40), and Defendant filed replies (Docs. # 41, 42). For the reasons that follow, the motions are due to be granted in part and denied in part.

# I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested.

# II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

# III. BACKGROUND

During his eleven-year tenure with the City of Montgomery, Alabama, Mr. Sharp has been denied five promotions.  (Am. Compl., at 3–10, 14 (alleging denials of promotions in 2009 (grants coordinator), 2012 (senior planner), 2015 (director of

city development), 2017 (general services director), and 2018–19 (director of economic and community development).)  This action is no longer about five lost promotions.  Mr. Sharp's concessions in response to the motions to dismiss have narrowed the litigable promotions to one (*see, e.g.*, Doc. # 39, at 1); the other four promotions are not timely brought.[1]  Here are the pertinent facts.

In 2018, Mr. Sharp applied for a promotion to the position of director of economic and community development for the City (the "director position").  On April 17, 2018, Mr. Sharp learned that he was "tied at number one on the register" to fill the position.  (Am. Compl., at 9.)  After nearly eight months had passed without the position being filled, Mr. Sharp received an email on December 10, 2018, from the Personnel Board's director that the position was being "reopened and reposted without being filled using the existing register" and that he would need to reapply. (Am. Compl., at 9–10.)  Upon receipt of this email, Mr. Sharp requested a meeting with the City's mayor, his legal counsel, and the director of the Personnel Board.  However, he "was only able to meet with" the mayor's legal counsel and the director of the Personnel Board.  (Pl. EEOC Charge, at 1 (Doc. # 36-1).)  During this

---

[1] The allegations pertaining to the denials of promotions in 2009 and 2012 are in the section of the amended complaint titled, "Background and Defendants' Relevant Conduct." (Am. Compl., at 3.)  Because the amended complaint is not clear, to the extent that Mr. Sharp intended to assert stand-alone claims based on these two denials, these claims will be dismissed.  It may be, however, that Mr. Sharp has alleged past denials of promotions to support his § 1983 municipal liability claims, which are addressed in Part IV.A.

meeting, Mr. Sharp conveyed his opinion that the City, in conjunction with the Personnel Board, reopened the position, rather than promote him, because of Mr. Sharp's race (African American). (Am. Compl., at 10; Pl. EEOC Charge, at 1.) At some point, Mr. Sharp learned that the City's chief of staff had ordered the destruction of the register and the creation of a new register to fill the director position. (Am. Compl., at 9–10.)

Again, on January 1, 2019, Mr. Sharp informed "Defendants and their representatives"[2] that he believed that the City was "using race as a determining factor" and was using "racially discriminatory hiring practices to fill the [director position]" in violation of his constitutional and civil rights. (Am. Compl., at 11.) Eight days later on January 9, 2019, Mr. Sharp received an email from Defendants that his rank on the newly created register for the director position had dropped to number two, behind a white female. (Am. Compl., at 11.) As a result of his drop in ranking, Mr. Sharp's attorney mailed a letter, dated January 22, 2019, to the mayor, the mayor's legal counsel, the mayor's chief of staff, and the director of the Personnel Board, "complaining that race had been used as a factor to prevent" Mr. Sharp "from being promoted to" the director position. (Am. Compl., at 12; *see also* Letter (Doc. # 29-1).) Those preventive measures included the reopening and

---

[2] His EEOC charge identifies the representatives as two employees of the Personnel Board. (Pl. EEOC Charge, at 1–2.)

reposting of the director position without filling the position from the existing register on which Mr. Sharp ranked first.  (Am. Compl., at 9–10.)

Eight weeks after the January 22 letter, Mr. Sharp learned that he was not picked for the promotion.  (Am. Compl. ¶ 13.)  Instead, another African-American male got the job.  Although the individual selected is the same race as Mr. Sharp, Mr. Sharp alleges that, after he complained about race discrimination, "Defendants abandoned their plan to hire the white female and contrived a retaliatory scheme to hire" an "unqualified black male" as the director of economic and community development.  (Am. Compl., at 12–13.)

In short, Mr. Sharp alleges that he ranked first on the register for the initial posting for the director position; however, after the reposting of the position, Mr. Sharp's rank dropped to number two behind a white female.  After Mr. Sharp complained that racial discrimination permeated the selection process, an allegedly unqualified but African-American candidate received the promotion over Mr. Sharp.

## IV.  DISCUSSION

### A.   <u>The City's Motion to Dismiss</u>

The City raises the following grounds for Rule 12(b)(6) dismissal of Mr. Sharp's claims alleging race discrimination and retaliation in the denial of a

promotion to the director position[3]:   (1) failure to plead a plausible claim of municipal liability under § 1981, § 1983, and the United States Constitution; (2) failure to plead discriminatory intent under Title VII and § 1983/§ 1981; (3) failure to plead a plausible Title VII pattern-and-practice claim; and (4) failure to plead plausible allegations of causation to state a retaliation claim under Title VII and § 1983/§ 1981.

### 1.     *§ 1983/§1981 Municipal Liability*

Since the City is considered a state actor, Mr. Sharp cannot sue it directly under § 1981 but must do so through the enforcement mechanism of § 1983.  *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) ("Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983."). Mr. Sharp also must bring his Fourteenth Amendment claim through § 1983.  *See* § 1983 (creating a civil right of action to remedy "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws").

To succeed on a § 1983 claim against a municipality, a plaintiff must show that he or she suffered injury by some action taken pursuant to either a custom or an official policy of the defendant.  *See Monell v. Dep't of Soc. Servs. of City of New*

---

[3] Based on Defendants' arguments and Mr. Sharp's concessions, Mr. Sharp's untimely claims alleging discriminatory denials of four other promotions will be dismissed without discussion.

*York*, 436 U.S. 658 (1978); *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985).  To allege a custom or policy, a plaintiff must plead either (1) an "officially promulgated" policy or (2) "an unofficial custom or practice . . . shown through the repeated acts of a final policymaker for the [governmental entity]." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).  In order to establish § 1983 liability against the City based on an unofficial custom or practice, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (citation and quotation marks omitted).  "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) (citation omitted).

The City argues that the amended complaint contains insufficient "factual content to plausibly show a municipal liability claim."  (City Mot. to Dismiss, at 6), While it cites authority generally addressing the custom or policy requirement, the City fails to develop an argument as to why it contends that the amended complaint does not allege a custom or policy.  It is clear though that Mr. Sharp has not alleged an officially promulgated policy, such as an ordinance or administrative order.  *See Grech*, 335 F.3d at 1330 ("[A] county rarely will have an officially-adopted policy of permitting a particular constitutional violation . . . .").  But on the undeveloped

arguments, the same cannot be said for the allegations with respect to an unofficial custom or practice.

Because an unofficial custom or practice requires plausible allegations of a widespread practice of racial discrimination, scrutiny of the allegations surrounding Mr. Sharp's past promotion denials is warranted.  Mr. Sharp alleges that, in addition to the lost promotion that is the basis of his causes of action, he was denied four additional promotions—in 2009, 2012, 2015, and 2017—and that those positions were filled with "unqualified" individuals, all of whom were white.  (Doc. # 35, at 3, 9, 13.)

Beginning with the 2017 promotion denial, the amended complaint's allegations do not establish that Mr. Sharp was qualified for the position of general services director.  According to the amended complaint's allegations, Mr. Sharp ranked ninth on the register, but only the top five ranked applicants were certified to the City's mayor to fill the vacancy.  (Doc. # 35, at 8.)  There are no non-conclusory allegations that the City played a part in the ranking of the applicants on the register; hence, there are no plausible allegations that the City discriminated against Mr. Sharp in the non-promotion because his name was not on the certified list from which the City could choose.  Mr. Sharp alleges, though, that the City "contrived" three additional application requirements—two video presentations and a written examination—in order to use race as the "determinative factor" to deny him the

8

promotion.  (Am. Compl., at 9.)  But this allegation as to the City's motive is conclusory and finds no factual support, particularly since the allegations indicate that each applicant, not just Mr. Sharp, had to fulfill these additional requirements. (Am. Compl., at 4, 5, 8.)  The allegations do not tangibly link these additional requirements to a discriminatory motive.

This leaves the promotion denials occurring in 2009, 2012, and 2015 for which Mr. Sharp alleges he was passed over in favor of less qualified white applicants.  He pits his twenty years of relevant experience and his educational background—which include a master's degree in public administration and a master's degree in community planning with a concentration in public policy— against the qualifications of those selected.  (Am. Compl., at 13.)  Of the white individuals promoted, one had not earned a degree beyond a high school diploma and another had a single bachelor's degree.  (Am. Compl., at 3.)  As to the third "unqualified" white selectee, Mr. Sharp alleges that the City "circumvented the principles of merit system" by "convert[ing] the contract of employment of . . . an unqualified white female" to fill a merit position.  (Am. Compl., at 3–4.)

Although just barely, Mr. Sharp's municipal liability claim sufficiently pleads an unofficial policy.  The City's allegedly discriminatory motive in denying Mr. Sharp multiple promotions during his career for which he alleges he was more qualified than the white individuals selected, in combination with the allegations

pertaining to the destruction of the register in 2018 on which he ranked first, are enough to cross the threshold from speculative to plausible.  That these incidents pertain only to Mr. Sharp is not fatal to his claim.  The Eleventh Circuit has held that a single plaintiff's allegations of "a persistent practice of racial discrimination in evaluating his work performance" were sufficient to support § 1983 municipality claims premised on a custom or practice and to withstand a Rule 12(b)(6) motion to dismiss.[4]  *Brown*, 923 F.2d at 1482; *cf. Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1497 (11th Cir. 1986) (affirming a jury verdict against a municipality in a police brutality case on the basis that approximately five prior incidents of excessive force established an unofficial custom for purposes of § 1983 liability).

The City's motion to dismiss the § 1983 municipal liability claims will be denied.

---

[4] To be clear, the amended complaint's conclusory allegations have not been considered. For example, Plaintiff alleges that "race determinative" decisions are "routine operations at the City of Montgomery." (Am. Compl., at 14.)  The allegations in this paragraph continue in the same conclusory vein:  "The prevalence of racial discrimination and retaliation is ubiquitous throughout the human resources management functions of the City of Montgomery and has created a culture of ongoing work place injustice . . . ." (Am. Compl. at 14.)  This vague verbiage is insufficient to convert an averment of a widespread discriminatory practice from speculative to plausible.  *See Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (finding that an unsupported "vague allegation" that "the abuse to which the Plaintiff was subjected to was not an isolated incident, and was consistent with policy, custom, and practice of Miami-Dade County" was insufficient to plead a § 1983 municipality liability claim).

2.   *Pleading discriminatory intent under Title VII and § 1983/§ 1981*

Title VII, § 1981, and § 1983 all prohibit "intentional discrimination based on race in the employment context." *Blash v. City of Hawkinsville*, 856 F. App'x 259, 263 (11th Cir. 2021).  The City argues that Mr. Sharp has failed to plead facts plausibly establishing discriminatory intent in the denial of the promotion to the director position.  The gist of this argument is that allegations of discriminatory intent are lacking because "another black male" was selected for the position.  (City Mot. to Dismiss, at 7.)  This argument is not persuasive at this stage of the litigation.

Circumstantial evidence of intentional discrimination can be shown where after the rejection of the application, the employer "either filled the position with a person not of the same racial minority or left the position open." *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The City's argument does not address the scenario where the employer rejects the application and leaves the position open.  The facts of the amended complaint, construed in the light most favorable to Mr. Sharp, plausibly fit within this scenario.

According to the amended complaint's allegations, Mr. Sharp learned in April 2018 that, based on his qualifications, he was tied for number one on the register for the director position.  (Am. Compl., at 9.)  He then heard nothing about his application until nearly eight months later.  In December 2018, the Personnel

Board's director notified him that the director position would not be filled based on the existing register and that he would have to reapply for the position. He subsequently learned that the City's chief of staff had ordered the destruction of the register and the creation of a new register to fill the position. (Am. Compl., at 9–10.)

These facts are enough from which to infer that the City took affirmative steps to pass over Mr. Sharp, a qualified[5] African American ranked in the top spot on the register, and re-announced the position in order to look for someone else to fill the position. Mr. Sharp has alleged enough to show plausibly that the City rejected his application and left the position open to seek applications from individuals with Mr. Sharp's qualifications. How the facts play out is a matter for discovery. Dismissal of Mr. Sharp's Title VII and § 1983/§ 1981 claims alleging racial discrimination in the denial of the promotion to the director position is not warranted.

### 3.   *Title VII pattern-and-practice claims*

The City moves for dismissal of Mr. Sharp's Title VII pattern-and-practice discrimination claims. (City Mot. to Dismiss, at 7 (citing *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).) The Eleventh Circuit has held that a pattern-or-practice claim under Title VII is available only to the federal

---

[5] The amended complaint sets forth Mr. Sharp's experience and education (*see, e.g.*, Am. Compl., at 13; *see also* Ex. 2 to Compl), and the City does not dispute that Mr. Sharp "was qualified for position of Director of Economic and Community Development." (Reply Br., at 2–3 (Doc. # 41).)

government or to a class of private plaintiffs under Federal Rule of Civil Procedure

23(b)(2).  *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir.

2000)  ("[A] pattern and practice claim either may be brought by the EEOC . . . or

by a class of private plaintiffs" under Title VII); *accord Davis v. Coca-Cola Bottling*

*Co. Consol.*, 516 F.3d 955, 964–65 (11th Cir. 2008), *abrogated on other grounds by*

*Twombly*, 550 U.S. at 544.  Mr. Sharp, obviously, is not the federal government, and

he did not bring his single-plaintiff lawsuit as a class action.

In his brief, Mr. Sharp has not argued that he is trying to bring a free-standing

Title VII pattern-or-practice claim.  He fails to address at all the City's contention

that his amended complaint includes a pattern-or-practice claim.  While it does not

appear that the amended complaint encompasses such a claim, the relief Mr. Sharp

seeks is wide sweeping.  (*See* Am. Compl., at 15–16.)  Hence, to the extent that Mr.

Sharp brings a pattern-or-practice claim as a predicate for the expansive relief he

requests, the claim will be dismissed.[6]

### 4.    *Title VII and § 1983/§ 1981 retaliation claims*

"Where . . . a plaintiff's claims under Title VII are based on the same set of

facts as his claims under § 1983, the analysis under Title VII is identical to the

analysis under § 1983."  *King v. Butts Cnty. Ga.*, 576 F. App'x 923, 931 (11th Cir.

2014).  That is the scenario here.  To state a claim for retaliation, "an employee must

---

[6] Whether *evidence* of a pattern and practice is admissible to support Mr. Sharp's other claims is not at issue here.  That issue, if it becomes an issue, is for another day.

plausibly allege he engaged in statutorily protected expression, he suffered a materially adverse employment action, and there was a causal link between the protected expression and adverse action." *Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 741 (11th Cir. 2020).

The City argues that Mr. Sharp fails to allege facts plausibly showing a causal link between his meeting with the mayor's legal counsel on December 10, 2018 (the protected expression) and the denial on March 22, 2019, of a promotion to the director position (the materially adverse employment action).  (City Mot. to Dismiss, at 12.)  The City cites *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007) (per curiam), as support for its argument that a three-month interval between the protected activity and termination is too attenuated from which to infer causation. However, *Thomas* qualified its holding, providing that, "*without more*," three months will not permit an inference of causation.  506 F.3d at 1364 (emphasis added).  Something "more" can be "that the adverse action was the 'first opportunity' for the employer to retaliate." *Jones v. Suburban Propane, Inc.*, 577 F. App'x 951, 955 (11th Cir. 2014) (per curiam) (citation omitted).

Based on the foregoing principles, there are allegations plausibly demonstrating a causal link.  First, as Mr. Sharp points out, the amended complaint sets forth that his attorney mailed a letter, dated January 22, 2019, to the mayor and the mayor's legal counsel, "complaining that race had been used as a factor to

prevent" Mr. Sharp "from being promoted to" the director position.  (Am. Compl., at 12.)  Those preventive measures included the reopening and reposting of the director position without filling the position from the existing register on which Mr. Sharp ranked first.  (Am. Compl., at 9–10.)  Eight weeks after the January 22 letter, Mr. Sharp learned that he was not picked for the promotion.  (Am. Compl. ¶ 13.)  It need not be decided whether, on these allegations, a two-month gap between the protected expression and the adverse employment action is adequate by itself for inferring the causal link.  *But see Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficient to infer a causal connection); *McCarley v. City of Northport*, 240 F. Supp. 3d 1242 (N.D. Ala. 2017) (Proctor, J.) (eight weeks and two days sufficient to infer a causal connection).  There is "more" within the context of the allegations.

Mr. Sharp's application for the director position was pending when his attorney sent the January 22, 2019 letter to the mayor and to the mayor's legal counsel challenging the reposting of the director position as racially discriminatory.  (Am. Compl., at 11–12.)  It is plausible from the allegations that the City's denial of the promotion to Mr. Sharp in March 2019 was its "first opportunity" to retaliate against Mr. Sharp for opposing perceived racially discriminatory hiring practices.  *Jones*, 577 F. App'x at 955.  The City's motion to dismiss is due to be denied as to

Mr. Sharp's Title VII and § 1983/§ 1981 claims alleging a retaliatory denial of promotion to the director position.

## B.    The Personnel Board's Motion to Dismiss

The Personnel Board's arguments for dismissal fall into four categories: (1) failure to exhaust administrative remedies under Title VII because the Personnel Board is not named as a respondent in the EEOC charge; (2) failure to plead discriminatory intent under Title VII and § 1983/§ 1981; (3) failure to plead the absence of a non-discriminatory, statutory-based reason for the reopening of the director position; and (4) failure to plead non-conclusory allegations of retaliation.

### 1.    *Failure to exhaust administrative remedies under Title VII*

The Personnel Board argues that Mr. Sharp failed to exhaust his administrative remedies prior to filing suit because he did not name the Personnel Board as a respondent in his charge filed with the Equal Employment Opportunity Commission ("EEOC").  Mr. Sharp admits that his EEOC charge did not identify the Personnel Board as the entity that discriminated against him; it identified only the City.  (Pl. Resp. to Bd. Mot. to Dismiss, at 2–5 (Doc. # 40).)  However, he argues that he should be allowed to proceed under Title VII against the Personnel Board based on the Board's agency relationship with the City and because his charge reveals that the Board "would be reasonably within the scope of an EEOC investigation."  (Pl. Resp. to Bd. Mot. to Dismiss, at 3.)

16

A Title VII "action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1).  Based on this statutory requirement, the general rule is that "a party not named in the EEOC charge cannot be sued in a subsequent civil action" under Title VII.  *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994).  However, because the EEOC charge typically is prepared by a layperson, as here,[7] courts "liberally construe" the naming requirement to avoid technical roadblocks to suit.  *Id.*; *see also Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977) ("We cannot believe Congress intended that a person filing charges should accurately ascertain, at the risk of later facing dismissal of their suit, at the time the charges were made, every separate entity which in some way may have violated Title VII.").  Hence, "[w]here the purposes of the Act are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts." *Virgo*, 30 F.3d at 1358–59.  Relevant factors for gauging whether the purposes of Title VII are met include:

> 1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

---

[7] The EEOC charge, on its face, does not indicate that Mr. Sharp had the assistance of counsel. (Doc. # 36-1.)

*Id.* at 1359. A sixth factor looks to whether an EEOC investigation reasonably would have encompassed the unnamed party. *See Hamm v. Members of the Bd. of Regents of Fla.*, 708 F.2d 647, 650 (11th Cir. 1983). This "factor weighs in favor of inclusion of an unnamed party if the party's identity or participation in the alleged discrimination is or is likely to be uncovered during the EEOC's reasonable investigation growing out of the charge." *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010) (citation omitted).

On the allegations and arguments, the first, third, fifth, and sixth factors are the most significant, and their demonstration is enough at this juncture to demonstrate that the purposes of the Act are fulfilled. As to the first factor, there is a sufficient "similarity of interest" between the Personnel Board and the City of Montgomery. *Virgo*, 30 F.3d at 1359. The Eleventh Circuit has spoken on this interest, having held that the Montgomery City-County Personnel Board is an "agent of the City [of Montgomery] for purposes of Title VII." *Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984) (per curiam).

Concerning the third factor, the notice-of-right-to-sue letter indicates that it was sent to the City, "c/o Carmen Douglas, Personnel Director" (Doc. # 1-1). The fact that the EEOC communicated with the City through the Personnel Board at the closure of its investigation is sufficient from which to infer that the last communication likely was not the first. *See generally Eggleston v. Chi. Journeymen*

18

*Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 907 (7th Cir. 1981)  ("[I]f a party has a close relationship with a named respondent . . . and has actual notice of the EEOC charge, . . . [it] should not be heard to cry 'foul' when later made a defendant in a suit . . . ." (citation and quotation marks omitted)).

Turning to the fifth factor, to the extent prejudice to the unnamed party can be assessed on the pleadings, the Personnel Board has not argued prejudice. The amended complaint also sets out no allegations from which to infer that the Personnel Board incurred prejudice.

Finally, under the sixth factor, although the Personnel Board's name is not typed in "Name" box of the EEOC charge, the name of the director of the Personnel Board appears several times in the "particulars" section of the charge.  (Doc. # 36-1.)  The Personnel Board's potential involvement in the alleged discrimination is inferable from Mr. Sharp's allegations "that the original register had not been filled because of [his] race."  (Doc. # 36-1.)  And the Personnel Board has not argued that it was surprised by being named in this suit.

Based on the foregoing, the court finds that, at the pleading juncture, dismissal of the Title VII claim for failure to exhaust administrative remedies is not warranted.

## 2. *Pleading discriminatory intent under Title VII and § 1983/§ 1981*

The Personnel Board argues that Mr. Sharp has not alleged any facts plausibly showing that it discriminated against him based on his race.  (Bd. Mot. to Dismiss,

19

at 3.)  For instance, the Personnel Board contends that Mr. Sharp has failed to plead the Personnel Board's involvement as to whom the City "ultimately selected for the position" of director of economic and community development.  (Bd. Mot. to Dismiss, at 5.)  However, accepted as true, the allegations say enough to bypass Rule 12(b)(6) dismissal based on the events surrounding the reposting and reopening of the job announcement for the director position and, in particular, based on Mr. Sharp's drop on the register from the first spot to the second spot.  *See supra* Part IV.A.2.  Whether his hierarchal placement on the register played a part in the City's failure to select Mr. Sharp from the certified applicant list is better left for discovery, "even if it strikes a . . . judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556.  Dismissal is not warranted on this ground.

**3.**    ***The Personnel Board's assertion that the amended complaint fails to plead the absence of a non-discriminatory, statutory-based reason for the reopening of the director position***

The Personnel Board's argument that the amended complaint fails to plead the absence of a legitimate, statutory-based reason for why the director position was reopened (*i.e.*, that potentially there were less than five applicants on the register) sounds like the *McDonnell Douglas* burden-shifting analysis.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The requirement that a plaintiff show

pretext—that a non-discriminatory reason is both false and that discrimination is the real reason—"is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002); *see generally Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (discussing the requirements for a plaintiff to show pretext under the *McDonnell Douglas* framework). The Personnel Board's argument does not present grounds for dismissal.

### 4. *Retaliation claim*

The Personnel Board argues that Mr. Sharp has failed to plead any non-conclusory allegations of retaliation by the Board. (Bd. Mot. to Dismiss, at 6.) The Personnel Board's sole non-conclusory argument is that any retaliatory motive would have been the City's because the City, not the Personnel Board, selected the director of economic and community development. The Personnel Board merely provided five names, including Mr. Sharp's, to the hiring authority (*i.e.*, the City). This argument was addressed and rejected in Part IV.B.2. It is rejected here as well.[8]

## V. CONCLUSION

Based on the forgoing, it is ORDERED that Defendants' motions to dismiss (Docs. # 36, 37) are GRANTED in part and DENIED in part as follows:

---

[8] New arguments raised in the Personnel Board's reply brief (Doc. # 42) have not been considered. *See generally Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.").

(1)    The City's and the Personnel Board's motions to dismiss Plaintiff's Title VII and § 1983/1981 claims alleging racially discriminatory denials of promotions in 2009 (grants coordinator), 2012 (senior planner), 2015 (director of city development), and 2017 (general services director) are GRANTED;

(2)    The Personnel Board's motion to dismiss is otherwise DENIED;

(3)    The City's motion to dismiss the § 1983 municipal liability claims (through which Plaintiff must prosecute his alleged § 1981 and Fourteenth Amendment violations) is DENIED;

(4)    The City's motion to dismiss is DENIED as to Plaintiff's Title VII and § 1983/§ 1981 claims alleging a racially discriminatory denial of promotion to the position of director of economic and community development;

(5)    The City's motion to dismiss is GRANTED to the extent that Plaintiff brings a free-standing Title VII pattern-or-practice claim; and

(6)     The City's motion to dismiss is DENIED as to Plaintiff's Title VII and § 1983/§ 1981 claims alleging a retaliatory denial of a promotion to the position of director of economic and community development.

DONE this 17th day of December, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE