IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY C. SHARP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-857-WKW |
| | ) | [WO] |
| CITY OF MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary C. Sharp brings this action alleging race discrimination and retaliation in the denial of promotions. He invokes Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e through 2000e-17 (Title VII); 42 U.S.C. § 1981 and a corresponding damages provision, 42 U.S.C. § 1981a; and 42 U.S.C. § 1983. He sues the City of Montgomery (the City).

Before the court is the City's motion to for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Doc. # 75). Sharp responded in opposition (Doc. # 77). Notably, the City did not file a reply brief. For the reasons that follow, the motion will be denied.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials . . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to

establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III. PROCEDURAL HISTORY

In November 2019, Sharp sued the City and multiple city officials alleging race discrimination and retaliation in the denial of promotions. (Doc. # 1.) He brought his claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e through 2000e-17 (Title VII); 42 U.S.C. § 1981; and 42 U.S.C. § 1983. (Doc. # 1 at 15.)

Three months later, in February 2020, Sharp filed the amended and operative complaint. (Doc. # 35.) In it, Sharp omitted the individual city officials and brought his claims against two Defendants: the City and the Montgomery City-County Personnel Board. Both Defendants moved to dismiss. (Docs. # 36, 37.) The court granted the motions in part and denied them in part. (Doc. # 51.) Specifically, the court narrowed the claims and found that Sharp only plausibly alleged claims for (1) a discriminatory failure to promote based on race against both Defendants, and (2) a failure to promote based on retaliation for protected activity against both Defendants.

Discovery was conducted. Over a year after the opinion at the motion-to-dismiss stage was entered (Doc. # 73), the parties jointly filed to voluntarily dismiss the Montgomery City-Count Personnel Board, and the court granted that motion (Doc. # 74). A day later, the City, the only remaining Defendant, moved for summary judgment on both of Sharp's claims. (Doc. # 75.) That motion is before the court in the lead up to trial, which is currently set for June 19, 2023. (Doc. # 61.)

## IV. FACTUAL BACKGROUND

The facts are relayed in the light most favorable to Sharp.

At the beginning of 2018, Sharp, a Black man, applied for a promotion to the position of director of economic and community development for the City (the director position). Sharp says that on April 17, 2018, he was told that he was ranked by the Personnel Board as being tied at number one for the position per the certified candidate register, which is a list of qualified candidates. However, the record indisputably establishes that Sharp was not given a ranking for the position. On April 17, 2018, the Personnel Board emailed Sharp and told him that he was "qualified" to be considered for the director position, and that "[s]ince there are five or less qualified applicants, all applicants were considered equal, and their names were placed on the register in alphabetical order." (Doc. # 75-1 at 28.)

After nearly eight months had passed without the position being filled, Sharp received an email on December 10, 2018 from the Personnel Board that the director

4

position was being reopened with updated qualifications and informing Sharp how to apply. (Doc. # 75-1 at 31.) Notably, reopening an employment registry when there are less than five eligible applicants on the register is specifically contemplated by the Personnel Department's Operations Manual, which states "that an appointing authority may request that a new list be established" if there are "less than five eligible applicants on the register." (Doc. # 77-4 at 1.) On December 18, 2018, Sharp received an email from telling him that his "application would be copied from earlier in the year to the new recruitment." (*Id.* at 25.) Sharp then went and complained to Judge Charles Price that he was being discriminated against by being denied the director position.

On January 1, 2019, Sharp emailed Personnel Analyst Cami Hacker and Personnel Director Carmen Douglas, who is Black, and expressed his belief that the City of Montgomery "had violated [his] Civil Rights when the decision was made to close the original announcement." (Doc. # 75-1 at 30.) Douglas responded by email. She explained the rule allowing for a new registry when there are less than five applicants and denying any discrimination. (*Id.*); (Doc. # 77-4 at 1.)

Thereafter, on January 22, 2019, Sharp's attorney sent a letter to then-Mayor Strange and others alleging race discrimination and that the City reopened the registry to prevent Sharp from being hired to fill the application because of his race. (Doc. # 75-1 at 25.)

5

Ms. Douglas responded to that letter on January 25, 2019, reiterating the rule about the option to create a new list when there were less than five applicants for a position, restating that Sharp was not ranked whatsoever on the original registry because there were less than five applicants, and insisting that Sharp was being treated equally by the Personnel Department. (Doc. # 75-1 at 27.)

At some point, Sharp was interviewed for the director position. So was Desmond Wilson, a black man who was once Sharp's supervisor. About eight weeks after Sharp's attorney sent his letter, the director position was filled by Desmond Wilson. Then-Mayor Strange made the hiring decision. Sharp says that Wilson did not have a master's degree, like the posting required, but the posting specifically states that "two years of qualifying experience can substitute for the master's degree." (Doc. # 75-1 at 31.)

Thereafter, on July 30, 2019, Sharp filed a charge with the EEOC alleging he was denied the position off the first registry based on race discrimination and that he was denied the position off the second registry "because [he] complained of race discrimination during the hiring process." (Doc. # 77-5 at 1–2.)

Notably, the City has not proffered a reason for why the initial registry was left open for months, then closed, and reopened. Nor has it provided a reason for why it declined to hire Sharp off the first registry.

## IV.  DISCUSSION[1]

Before turning to the merits, the court writes to emphasize the strange posture of this case.  Unlike almost every other employment discrimination at the summary judgment stage, this case lacks a discussion of the employer's proffered reason for doing something, and whether there is sufficient evidence to determine that that reason was pretextual and meant to cover up discrimination.  That discussion is absent because the City declined to provide any evidence, arguments, or basis to proactively defend its actions.  Specifically, totally absent from the record are two crucial factual assertions: (1) the City's articulation as to why it closed the initial registry/job opening, and (2) the City's articulation as to why it declined to hire Sharp off the first registry.  Indeed, the City's briefing completely declines to address these points.[2]  In many ways, their silence as to these factual issues condemns their pending motion for summary judgment.  Had they addressed them whatsoever, the outcome may very well have been different at this procedural stage.  For following reasons, the City's motion for summary judgment will be denied.

---

[1] This opinion only addresses the arguments raised by the Defendant in support of its motion for summary judgment.  Specifically, Defendant only moves for summary judgment as to the substantive merits of Sharp's two claims: race discrimination and retaliation.

[2] The City filed the motion and brief in support, but it did not file a reply to Sharp's response in opposition.

A.     **Failure to Promote Based on Race Discrimination**[3]

Title VII, § 1981, and § 1983 all prohibit "intentional discrimination based on race in the employment context." *Blash v. City of Hawkinsville*, 856 F. App'x 259, 263 (11th Cir. 2021). Sharp alleges he was discriminated against on the basis of his race when the City declined to hire him off the first registry but kept the position open. Sharp does not have any direct evidence supporting this narrative, so he must proceed using circumstantial evidence that would permit a reasonable factfinder to determine that the City's decision to leave the post open for months under the first registry, close it, and reopen it under a different registry was because it did not want to hire Sharp due to his race.

One way for inferring racial animus based on circumstantial evidence is the *McDonnell Douglas* framework. Under this framework, Sharp makes out a prima facie case of racial discrimination in the failure-to-promote context by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's

---

[3] If Sharp believes he has brought a claim for a discriminatory failure to promote based on the *second* registry, the court disagrees. Such a claim was not addressed in the court's prior opinion nor is it clearly in the complaint. Regardless, even if Sharp had brought that claim, summary judgment *would* be appropriate as to it, because a black man, like Sharp, ultimately landed the job, which prevents Sharp from establishing his prima facie case of discrimination on these facts.

qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). It is beyond dispute that Sharp has established all four of these elements. He is Black, the Personnel Department determined he was qualified for the position, he was not given the position for 8 months, the position was closed, and then immediately re-opened and the City continued to seek applications.

Accordingly, having established a prima facie case, the burden shifts to the City to "articulate some legitimate, nondiscriminatory reason" for not hiring Sharp but continuing to seek applications (albeit under a renewed posting). *Id*. Shockingly, the City chose not to "articulate some legitimate, nondiscriminatory reason" for not hiring Sharp off the first registry, making a new registry for the exact same position, and soliciting more applicants. *Id*. Summary judgment must be denied because Sharp made out his prima facie case, the burden shifted to the City, and the City failed to meet that burden by articulating a reason for declining to hire Sharp off the first registry.

Admittedly, the court believes that the City might be confused as to the nature of Sharp's claim. The City argues, as it did at the motion-to-dismiss stage, that Sharp fails to establish a *prima facie* case because the City ultimately hired a Black man off the second registry. However, the court has little sympathy for this confusion and misguided line of argument because it was directly addressed in the court's prior opinion:

9

> The City argues that Mr. Sharp has failed to plead facts plausibly establishing discriminatory intent in the denial of the promotion to the director position. The gist of this argument is that allegations of discriminatory intent are lacking because "another black male" was selected for the position. (City Mot. to Dismiss, at 7.) This argument is not persuasive at this stage of the litigation.
>
> Circumstantial evidence of intentional discrimination can be shown where after the rejection of the application, the employer "either filled the position with a person not of the same racial minority or left the position open." *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The City's argument does not address the scenario where the employer rejects the application and leaves the position open.  The facts of the amended complaint, construed in the light most favorable to Mr. Sharp, plausibly fit within this scenario . . . .
>
> Mr. Sharp has alleged enough to show plausibly that the City rejected his application and left the position open to seek applications from individuals with Mr. Sharp's qualifications.  How the facts play out is a matter for discovery.

(Doc. # 51 at 11–12.)

The City had an opportunity to present a reason for why it declined to hire Sharp off the first registry.  It was not a heavy burden.  But the City chose not to do so.  Summary judgment is denied as to Sharp's Title VII and § 1983/§ 1981 claims alleging racial discrimination in the denial of the promotion to the director position.

10

B. **Retaliatory Failure to Promote**

"Where . . . a plaintiff's claims under Title VII are based on the same set of facts as his claims under § 1983, the analysis under Title VII is identical to the analysis under § 1983." *King v. Butts Cnty. Ga.*, 576 F. App'x 923, 931 (11th Cir. 2014). That is the scenario here. Sharp alleges that he was ultimately denied the director position from the second registry because he complained about race discrimination in the City's handling of the first registry. The last time Sharp complained was through his attorney on January 22, 2019. Roughly two months later, someone else got the job. To state a claim for retaliation, "an employee must plausibly allege he engaged in statutorily protected expression, he suffered a materially adverse employment action, and there was a causal link between the protected expression and adverse action." *Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 741 (11th Cir. 2020).

Only causation is in dispute. The City argues that Sharp fails to establish causation because he has not presented any evidence that the decisionmaker with hiring and firing authority for the City of Montgomery, that is, then-Mayor Strange, knew about Sharp's protected conduct. Not so. As the court previously determined, Sharp's counsel's letter that was sent to Mayor Strange constitutes protected activity. Moreover, that letter was sent just two months before Mayor Strange decided to reject Sharp's application for the director position, the proximity of which allows a

11

reasonable juror to conclude that the adverse action was "causally related to the protected activity." *Patterson v. Georgia Pacific, LLC,* 38 F. 4th 1336, 1351 (11th Cir. 2022); *see also Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficient to infer a causal connection); *McCarley v. City of Northport*, 240 F. Supp. 3d 1242 (N.D. Ala. 2017) (Proctor, J.) (eight weeks and two days sufficient to infer a causal connection).  Moreover, the City's denial of the promotion to Sharp in March 2019 could be reasonably construed to have been the City's "first opportunity" to retaliate against Sharp for opposing perceived racially discriminatory hiring practices. *Jones v. Suburban Propane, Inc.*, 577 F. App'x 951, 955 (11th Cir. 2014) (per curiam) (citation omitted) (noting that proximity can also be supported by evidence "that the adverse action was the 'first opportunity' for the employer to retaliate" to establish causation).

The City's motion for summary judgment as to Sharp's Title VII and § 1983/§ 1981 claims alleging a retaliatory denial of promotion to the director position will be denied.

## V.  CONCLUSION

Based on the forgoing, it is ORDERED that Defendant's motion for summary judgment (Doc. # 75) is DENIED.

DONE this 15th day of May 2023.

/s/ W. Keith Watkins  
UNITED STATES DISTRICT JUDGE